USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 07/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK C. OBAH,

Plaintiff,

-v-

BRONXWORKS,

Defendant.

25-cv-1550 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

*Pro se* Plaintiff Patrick Obah ("Plaintiff" or "Obah") brings suit against Bronxworks for violations of Title VII of the Civil Rights Act of 1964 on the basis of race, color, and national origin; violations of 42 U.S.C. § 1981; and violations of the New York State Human Rights Law and New York City Human Rights Law. Defendant Bronxworks moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is granted.

**BACKGROUND**

The Court assumes the truth of the allegations of the Complaint and construes them liberally to state the strongest argument they suggest.

Plaintiff identifies as an "Igboo race—born African and Nigerian." Dkt. No. 1 at 4. On May 6, 2023, Plaintiff reported to the New York City Agencies Job Fair, at which he met a Bronxworks recruiter and manager, who affirmed that he was qualified for their management positions and case management positions. *Id.* at 5.[1] Plaintiff had previously applied for

[1] Unless otherwise stated, page numbers refer to ECF pagination.

positions at Bronxworks, from which he was rejected. Dkt. No. 16 at 1. Plaintiff was qualified for the position at Bronxworks based on his education, professional training, and prior experience performing the same type of work. *Id*. Bronxworks affirmed at that job fair that Plaintiff could apply. Dkt. No. 1 at 5. Bronxworks then called Plaintiff for an interview, at which he was asked where he was from and when he came to the United States. *Id.* at 6. The questions made Plaintiff uncomfortable. *Id.*

After his interview, Plaintiff was asked to sit for written exams. *Id.* at 5. When Plaintiff finished the written exam, he found there was nowhere to click "save." *Id.* The exam proctor told him he could leave and that she would take care of it. *Id.* The proctor then called and informed Plaintiff that his written exams were lost and that he would need to sit for the exams again. *Id.* He was told he had to retake the exam remotely. Dkt. No. 16 at 1. After he completed and submitted the second exam, Defendant failed to follow up on his candidacy. *Id.*

Plaintiff alleges that Bronxworks now has affirmed that Plaintiff does not qualify for any positions in the agency and will never qualify. Dkt. No. 1 at 5–6. He seeks damages for the emotional trauma and depression that followed his experience with Bronxworks. *Id.* at 7.

**PROCEDURAL HISTORY**

Plaintiff filed a charge of discrimination with the EEOC on February 23, 2024. Dkt. No. 1 at 6. He received a Notice of Right to Sue on February 19, 2025. *Id.* at 13. Plaintiff initiated this proceeding by complaint on February 21, 2025. Defendant moved to dismiss the Complaint, along with a memorandum of law in support thereof, on November 11, 2025. Dkt. Nos. 10–11. Plaintiff filed an opposition to the motion to dismiss on March 15, 2026, to which Defendant replied on March 27. Dkt. Nos. 16–17. With leave of court, Plaintiff filed a subsequent letter in opposition on June 12, 2026, to which Defendant again replied on June 18. Dkt. Nos. 25–26.

## LEGAL STANDARD

On a motion to dismiss a *pro se* plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff, mindful that the "need to draw all inferences in the plaintiff's favor has heightened application when the plaintiff is proceeding pro se." *McInerney v. Renssleaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether a "claim has facial plausibility," which is established where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556; *see Mattrixx Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). That solicitude does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from

conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[P]ro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure."). The Court may also consider factual allegations made in support of the *pro se* plaintiff's claims within his opposition papers. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

**DISCUSSION**

Plaintiff alleges that Defendant discriminated against him on the basis of race and national origin in violation of Title VII, Section 1981, and the New York State and New York City Human Rights Laws.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may rely on either direct or indirect allegations of discriminatory animus. Direct discrimination may be alleged by reference to "remarks made by decision makers that could be viewed as reflecting [such] animus." *Henry v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). Where a plaintiff relies instead on indirect evidence, discrimination claims under Title VII are subject to the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) ("To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly,

by indirectly showing circumstances giving rise to an inference of discrimination." (internal quotations omitted)); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

Under that framework, a plaintiff must first establish "a prima facie case of discrimination." *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020). To do so, he must show that "(1) [he] belonged to a protected class; (2) [he] was qualified for the position she held; (3) [he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2023 WL 4763257, at *5 (S.D.N.Y. July 26, 2023) (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) and *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "To make out a Title VII discrimination claim, [plaintiff] must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024).

Importantly, "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at 86–87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted). Additionally, "the elements of a prima facie case may be used

as a prism to shed light upon the plausibility of the claim." *Littlejohn*, 795 F.3d at 311 n.9 (internal quotation marks omitted); *accord Vega*, 801 F.3d at 84 n.7 (same).

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). It is well-settled that "claims brought pursuant to Section 1981 are analyzed under the same standards as Title VII claims." *Ganthier v. N. Shore-Long Island Jewish Health Sys.*, 45 F. Supp. 2d 271, 282 (E.D.N.Y. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). As in the Title VII context, to prevail on his § 1981 claim, Plaintiff must "initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).[2]

Defendant does not dispute either that Plaintiff is a member of a protected class or that the failure to hire him may constitute an adverse employment action. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (noting that the Second Circuit has "defined adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand'") (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). Defendant argues that Plaintiff has failed to plausibly allege that he was either qualified for the position or that the adverse employment action occurred under

[2] "Section 1981 does not prohibit discrimination on the basis of . . . national origin." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).

circumstances giving rise to an inference of discriminatory intent as required to state a claim under Title VII or Section 1981.

"To satisfy the qualification prong of a failure-to-hire claim under Title VII . . . and thus Section 1981 . . . 'a plaintiff must show only that he possessed the basic skills necessary for the performance of the job, that is, that he satisfied the criteria the employer has specified for the position.'" *Perelman v. Fed. Res. Dist. Bank of N.Y.*, 2026 WL 1584729, at *4 (S.D.N.Y. June 3, 2026) (quoting *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 2025 WL 1795378, at *8 (S.D.N.Y. June 30, 2025)). The plaintiff's pleadings "must . . . contain 'a description of the responsibilities or duties' of the position 'from which one could infer that the plaintiff was qualified for that position.'" *Molina v. John Jay Inst. for Just. & Opportunity*, 2024 WL 4276913, at *7 (S.D.N.Y. Sept. 24, 2024) (quoting *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328–29 (E.D.N.Y. 2002)).

Plaintiff alleges that the recruiter for Bronxworks with whom he interacted at the New York City Agencies Job Fair "agreed to accept my applications and affirmed that I am qualified for their Management Positions and Case Management Positions." Dkt. No. 1 at 5. He also alleges that he was qualified for the management and case management positions at Bronxworks because of his "education, professional training, and prior experience performing the same kind of work." Dkt. No. 16 at 1. Plaintiff further alleges that he was invited to interview for the position, and that after a successful interview he was asked to sit for written exams. Dkt. No. 1 at 5.

Alone, Plaintiff's sparse allegations with respect to the content of the job and his prior qualifications do not result in the plausible inference that he was, in fact, qualified. He does not "describe what anyone holding such positions . . . actually does, let alone explain how his

education and work experience align with those roles." *Perelman*, 2026 WL 1584729, at *5. However, Plaintiff's allegation that he was in fact interviewed for the role, and that he was successful at the interview such that he proceeded to the next step in the interview process, make it plausible, construing his pleadings to raise the strongest possible argument, that he was in fact minimally qualified for the position. *See Johnson v. Connecticut*, 798 F. Supp. 2d 379, 386 (D. Conn. 2011) (plaintiff met burden on prima facie case to demonstrate qualification for job on failure-to-promote claim where "[p]laintiff was pre-screened and received an interview because he had the requisite qualifications"). There is no apparent reason why, if Plaintiff was entirely unqualified for the position, Defendant would have granted him an interview in the first instance. And if, at that interview, it was determined that he was entirely without the minimal qualifications necessary to fulfill the position, there is no apparent reason why Defendant would have asked him to proceed to a written assessment. *See Hampton v. Diageo N. Am., Inc.*, 2008 WL 350630, at *6 (D. Conn. Feb. 7, 2008) (finding that "the fact that they were selected for interviews" helped to establish "that the plaintiffs had at least the minimum qualifications for the positions for which they applied"). At the motion to dismiss stage, and in consideration of Plaintiff's *pro se* status, that allegation is sufficient to state a claim that he was qualified for the job.

Plaintiff's Title VII and Section 1981 claims fail, however, because he has not plausibly alleged that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. The only fact alleged by Plaintiff that might indicate the basis for such discrimination is that he was asked in his interview where he came from and when he arrived in the United States. He alleges that due to these questions, he "[f]igured out about their discrimination and plans to get rid of [him]." Dkt. No. 1 at 6. But that allegation does not

plausibly indicate discrimination based on a protected characteristic. An employer is permitted to ask a potential employee when and from where he arrived in the United States without subjecting itself to a claim of employment discrimination. "The mere fact that [an interviewer] discussed [the] plaintiff's national origin and religion while interviewing [the] plaintiff does not indicate that [the defendant] discriminated against [the] plaintiff since Title VII does not bar all discussion of religion and/or national origin in an employment setting." *Pasic v. Eztzi's Tex. Holding Corp.*, 2002 WL 31938854, at *3 (S.D.N.Y. Jan. 9, 2002). That question does not make it plausible that the interviewer discriminated against Plaintiff on the basis of his color, race, or national origin. *See Paupaw-Myrie v. Mt. Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 97 (S.D.N.Y. 2023) ("Statements that merely acknowledge Plaintiff's membership in a protected class do not support an inference of discrimination."); *Pasha v. William M. Mercer Consulting Inc.*, 2004 WL 188077, at *4 (S.D.N.Y. Feb. 2, 2004) ("Statements and questions that 'merely acknowledge' an individual's national origin or background 'do not support an inference of discriminatory animus.'") (quoting *Chudnovsky v. Prudential Sec., Inc.*, 2000 WL 1576876, at *8 (S.D.N.Y. Oct. 23, 2000)); *Shkoza v. NYC Health and Hosps. Corp.*, 2021 WL 4340787, at *4 (S.D.N.Y. Sept. 22, 2021) ("Facially neutral questions about a person's place of origin or citizenship status—particularly questions that may naturally arise when a new employee is hired—are not probative of a discriminatory animus absent any other indicia of discrimination.").

Plaintiff's remaining allegations indicate that, to the contrary, the question asked by the interviewer about where he was from had no impact on his candidacy. Plaintiff alleges that following the interview he advanced to the next stage in the interview process. *Cf. McManamon v. Shinseki*, 2013 WL 3466863, at *13 (S.D.N.Y. July 10, 2013) (that the plaintiff "progressed . . . along in the interview process" is "inconsistent with an inference of retaliation"). Plaintiff does

not allege that the technological issues that prevented him from submitting his written examination were in any way connected to the original interviewer, or that the proctor at the examination center took any interest in his national origin or race.

Plaintiff's only additional allegation is that the question asked by the interviewer made him subjectively feel "uncomfortable." Dkt. No. 1 at 6. "[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371–72 (S.D.N.Y. 2005) (quoting *Little v. New York*, 1998 WL 306545, at *5 (E.D.N.Y. June 8, 1998), *aff'd*, 1999 WL 220147 (2d Cir. April 14, 1999)); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination") (alterations and quotation marks omitted). At base, because the Complaint "contains nothing more than 'bare, unsubstantiated allegations that Defendant was discriminated against because of his race and color,' 'he has not demonstrated circumstances giving rise to an inference of discrimination.'" *Obah v. Dep't of Probation*, 2025 WL 3033667, at *2 (S.D.N.Y. Oct. 30, 2025) (quoting *Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 205 (E.D.N.Y. 2012), *aff'd*, 522 F. App'x 46 (2d Cir. 2013)).[3]

---

[3] A plaintiff alleging indirect discrimination under Title VII may also do so by alleging that the employer "treated him less favorably than a similarly situated employee outside his protected group." *Obah v. Dep't of Admin. for Child.'s Servs.*, 2024 WL 2848903, at *7 (S.D.N.Y. May 2, 2024) (quoting *James v. Borough of Manhattan Cmty. Coll.*, 2021 WL 5567848, at *5 (S.D.N.Y. Nov. 29, 2021)). To do so, a plaintiff must plausibly allege that he "was similarly situated in all material respects to the individual with whom he seeks to compare himself." *Id.* Plaintiff has not alleged that anyone else was hired for the role for which he was denied, or that such person was either of a different protected class or materially similarly situated.

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."). Having dismissed Plaintiff's only federal claim, the Court declines to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid employment discrimination claim, the Court grants Plaintiff thirty days' leave to amend his Complaint to detail his claims.

## CONCLUSION

The motion to dismiss is GRANTED without prejudice to repleading. Plaintiff shall submit any amended pleadings within 30 days of the date of this Order (August 20, 2026). The Clerk of Court is respectfully directed to close Dkt. No. 10.

SO ORDERED.

Dated: July 21, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge